UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22784

FRANKLIN GELL,

     Plaintiff,

v.

CARNIVAL CORPORATION & PLC,

     Defendant.

_____/

### COMPLAINT FOR DAMAGES
### AND DEMAND FOR TRIAL BY JURY

     Plaintiff, FRANKLIN GELL (hereinafter "GELL"), through undersigned counsel, sues Defendant, CARNIVAL CORPORATION & PLC, (hereinafter "CARNIVAL"), and demands trial by jury, stating as follows:

### PARTIES AND JURISDICTION

     1.    GELL seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

     2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

     3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

     4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by CARNIVAL.

     5.    GELL is *sui juris* and is a resident and citizen of the state of Florida.

     6.    CARNIVAL is a citizen of the state of Florida and the nation of Panama.

7.     CARNIVAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8.     CARNIVAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

      a.     Operated, conducted, engaged in, or carried on a business venture; and/or

      b.     Had an office or agency; and/or

      c.     Engaged in substantial activity; and/or

      d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the surface that GELL tripped on, the foreign substance on the subject surface, the surrounding area, the lighting in the area, and all material and effects pertaining thereto, including the design, visual condition, and/or any other material pertaining to the area.

11.     At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, the *Spirit*.

12.     GELL'S incident occurred on or about July 8, 2022, while he was a fare paying passenger on CARNIVAL'S vessel, the *Spirit*.

13.    At all times material hereto, CARNIVAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in GELL'S incident.

14.    On or about July 8, 2022, at approximately 11:00 p.m., GELL was dancing in the nightclub "Disco." There was a sticky foreign substance on the subject surface. However, the lighting was unreasonably dim such that he was unable to see this substance prior to stepping in it. While dancing, GELL's feet got stuck on the subject surface, and his body spun.

15.    As a result, his leg twisted, he fell to the ground, and he sustained severe injuries that include, but are not limited to, torn patellar tibular tendons on both legs.

16.    He was taken to the ship's medical center approximately thirty minutes after his incident, the ship's doctor misdiagnosed the strength of the pulse in his right ankle and misdiagnosed him with a vascular injury. Therefore, the ship's doctor ordered GELL to medically disembark from the ship and arranged to have him airlifted to a hospital in Juneau, Alaska. However, when GELL arrived at this hospital, he was informed that he did not have a vascular injury, such that GELL did not need to be transported to this hospital in Juneau, Alaska, thereby incurring additional pain, suffering, expenses, and/or other damages.

17.    Moreover, GELL was prescribed an insufficient amount of pain medicine for his trip to the hospital in Juneau, Alaska, such that he was in great pain for a longer amount of time. Furthermore, when the ship's medical staff took GELL back to his cabin, they did not switch him to a handicap room, and could not fit his stretcher through the door, such that GELL had to drag himself from the hallway to his bed.

18.    At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

    a.   The foreign substance on the subject surface, which was unreasonably present

when GELL's incident occurred, and which caused GELL's feet to become stuck.

b.   The subject surface was dark and it, as well as the surrounding area, lacked adequate visual cues (such as proper visual elements/coloring) to help passengers see foreign substances on the subject surface.

c.   The unreasonable lack of policies and/or the unreasonable non-enforcement of such policies regarding the consumption, use, possession, and/or other such handling of drinks or other materials that could become foreign when dropped or left on the subject surface.

d.   The unreasonable passenger crowding in the subject area, caused by CARNIVAL'S lack of reasonable crowd control.

e.   There was inadequate lighting in the area and on the surface such that the area and surface were too dim and not properly lit, and GELL could not see the foreign substance on the subject surface as a result.

f.   Other dangerous conditions that will be revealed through discovery.

19.   Each of these dangerous conditions alone was sufficient to cause GELL'S incident and injuries, and GELL is alleging that CARNIVAL was negligent as to each of these conditions separately and not cumulatively.

20.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.   GELL did not observe anyone spill anything in the subject area, and he was in the subject area for at least fifteen minutes prior to his incident, such that it is reasonable for the fact finder to infer that the foreign substance that was on the subject floor was

present for over fifteen minutes prior to GELL's incident (and that the length of time this substance was on the subject surface caused it to become foreign), and CARNIVAL should have known of this substance had it performed reasonable inspections to keep its surfaces reasonably safe.

b. There was a yellow caution cone that stated something to the effect of "watch your step" or "slippery when wet" in the subject area.

c. Furthermore, GELL observed CARNIVAL'S crewmembers in the subject area at the time of the incident, and these crewmembers were in the immediate vicinity, such that GELL reasonably infers that these crew members regularly used, observed, and tended to the subject area, and therefore were or should have been aware of the dangerous and/or risk-creating conditions thereof, and warned of and/or removed these conditions, and/or more reasonably controlled the crowd.

d. CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject surface, such that CARNIVAL should have known of the design defects of the subject surface and area before providing them for public use. These design defects include, but are not limited to, the structural dangers outlined in paragraph 18 of this Complaint.

e. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 18 of this Complaint, and CARNIVAL should have known of these

standards/recommendations/other       guidelines       because       whether       such standards/recommendations/other guidelines are legally required for CARNIVAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done.

f.  CARNIVAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in GELL'S incident, and if it did not know of these dangerous conditions, this was because CARNIVAL failed to adequately inspect the subject area prior to her incident.

g.  Previous passengers suffered prior incidents involving similar surfaces and/or other similar conditions as GELL. *See, e.g., Bailey v. Carnival Corp*., No. 06-21915-CIV, 2007 WL 9703133, at *2 (S.D. Fla. Dec. 21, 2007) (citing *Keefe v. Bahama Cruise Line, Inc*., 867 F.2d 1318, 1322 (11th Cir. 1986)) ("[H]olding that actual or constructive notice of the risk creating situation was necessary for the shipowner to be liable where **passenger slipped on slippery and foreign dance floor**") (emphasis added); *see also Cogburn v. Carnival Corp*., No. 21-11579, 2022 WL 1215196, at *1 (11th Cir. Apr. 25, 2022) ("When Cogburn fell, her dress absorbed the puddle's liquid. The spot with the liquid felt a 'little tacky' and '[s]lightly **foreign**.'") (emphasis added); see also

h.  Moreover, CARNIVAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

21.  At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

22.   The subject area and the vicinity lacked adequate safety features to prevent or minimize GELL'S incident and/or injuries.

23.   These hazardous conditions were known, or should have been known, to CARNIVAL in the exercise of reasonable care.

24.   These hazardous conditions existed for a period of time before the incident.

25.   These conditions were neither open nor obvious to GELL.

26.   At all times relevant, CARNIVAL failed to adequately inspect the subject area and the vicinity for dangers, and CARNIVAL failed to adequately warn GELL of the dangers.

27.   At all times relevant, CARNIVAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

28.   At all times relevant, CARNIVAL failed to maintain the subject area and the vicinity in a reasonably safe condition.

29.   At all times relevant, CARNIVAL participated in the design and/or approved the design of the subject area and the vicinity involved in GELL'S incident.

30.   At all times relevant, CARNIVAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in GELL'S incident.

31.   The crewmembers of the *Spirit* were in regular full-time employment of CARNIVAL and/or the ship, as salaried crewmembers.

32.   CARNIVAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and CARNIVAL had the right to hire and fire its crewmembers, employees, and/or agents.

33.   CARNIVAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

34.    The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of CARNIVAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

35.    The crewmembers were represented to GELL and the ship's passengers as employees of CARNIVAL through signs, documents, and/or uniforms. The crewmembers were also paid salary and/or hourly wage by CARNIVAL. CARNIVAL knew that the crewmembers represented themselves to be employees of CARNIVAL and allowed them to represent themselves as such. GELL detrimentally relied on these representations as GELL would not have proceeded on the subject cruise had he believed the crewmembers were not employees of CARNIVAL.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT**

36.    GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

37.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

38.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

39.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL breached the duty of reasonable care owed to GELL and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 18 of the instant Complaint were present at the time of GELL'S incident.

40.   CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 20 of the instant Complaint.

41.   These risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

42.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

43.   CARNIVAL'S negligence proximately caused GELL great bodily harm in that, but for CARNIVAL'S negligence, GELL'S injuries would not have occurred.

44.   As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

45.   The losses are permanent and/or continuing in nature.

46.   GELL suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury,

pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO MAINTAIN**

47.    GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

48.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

49.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

50.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to GELL and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 18 of the instant Complaint were present at the time of GELL'S incident.

51.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 20 of the instant complaint.

52.    Moreover, these risk-creating and/or dangerous conditions were caused by CARNIVAL'S failure to adequately maintain the subject area and the vicinity.

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 10 of 32**

53.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

54.   CARNIVAL'S negligence proximately caused GELL great bodily harm in that, but for CARNIVAL'S negligence, her injuries would not have occurred.

55.   As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

56.   The losses are permanent and/or continuing in nature.

57.   GELL has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT III**
**NEGLIGENT FAILURE TO REMEDY**

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 11 of 32**

58.    GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

59.    CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

60.    This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

61.    At all times material, CARNIVAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with CARNIVAL, breached the duty of reasonable care owed to GELL and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 18 of the instant Complaint were present at the time of GELL'S incident.

62.    CARNIVAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 20 of the instant Complaint.

63.    Moreover, these risk-creating and/or dangerous conditions were caused CARNIVAL'S failure to adequately remedy the subject area.

64.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

65.    CARNIVAL'S negligence proximately caused GELL great bodily harm in that, but for CARNIVAL'S negligence, her injuries would not have occurred.

66.     As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

67.     The losses are permanent and/or continuing in nature.

68.     GELL has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

69.     GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

70.     At all times relevant, CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including GELL.

71.     Such duty includes, but is not limited to, the duty that CARNIVAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to GELL.

72.    Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

73.    Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 20 of this Complaint.

74.    These dangerous conditions were also created by CARNIVAL.

75.    CARNIVAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or CARNIVAL failed to warn GELL despite knowing of the dangers.

76.    These dangerous conditions existed for a period of time before the incident.

77.    These conditions were neither open nor obvious to GELL.

78.    CARNIVAL'S breach was the cause in-fact of GELL'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

79.    Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

80.    CARNIVAL'S breach proximately caused GELL great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

81.    As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

82.   The losses are permanent and/or continuing in nature.

83.   GELL has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT V
## <u>NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY</u>

84.   GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

85.   At all times material hereto, CARNIVAL owed a duty to its passengers, and in particular a duty to GELL, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 18 in the instant Complaint, as well as to design and install reasonable safeguards.

86.   At all times material hereto, CARNIVAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which GELL was injured into the channels of trade, and/or CARNIVAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

87.     At all times material hereto, CARNIVAL manufactured, designed, installed, and/or approved of the *Spirit* , including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to GELL, to design, install and/or approve of the subject area and the vicinity without any defects.

88.     At all times material hereto, CARNIVAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with CARNIVAL, designed, installed, and/or approved of the subject area and the vicinity involved in GELL'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

89.     CARNIVAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

90.     CARNIVAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Spirit* , during the new build process.

91.     CARNIVAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

92.     CARNIVAL has the right to inspect and reject design elements before taking possession of the ship.

93.     However, CARNIVAL permitted the dangerous conditions discussed in paragraph 18 of the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

94.     Furthermore, CARNIVAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 20 of this Complaint.

95.     The design flaws that made the subject area and the vicinity involved in GELL'S incident unreasonably dangerous were the direct and proximate cause of GELL'S injuries.

96.     CARNIVAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in GELL'S incident, which it knew or should have known of.

97.     CARNIVAL failed to correct and/or remedy the defective conditions, despite the fact that CARNIVAL knew or should have known of the danger(s).

98.     CARNIVAL'S breach was the cause in-fact of GELL'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

99.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

100.    CARNIVAL'S breach proximately caused GELL great bodily harm in that the incident that occurred was a foreseeable result of CARNIVAL'S breach.

101.    As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

102.    The losses are permanent and/or continuing in nature.

103.    GELL has suffered these losses in the past and will continue to suffer such loses in

the future.

  **WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF CARNIVAL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

  104. GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

  105. CARNIVAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

  106. The crewmembers who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or securing the subject area, including specifically the crewmembers who were responsible for crowd control in the subject area, were agents of CARNIVAL for the following reasons:

  a. They were the staff and/or employees of CARNIVAL, or were CARNIVAL'S agents, apparent agents, and/or servants; and/or

  b. These staff, employees, and/or agents were subject to the right of control by CARNIVAL; and/or

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**
**Page 18 of 32**

c.      These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d.      CARNIVAL acknowledged that these staff, employees, and/or agents would act on CARNIVAL'S behalf, and they accepted the undertaking.

107.  CARNIVAL is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in paragraph 18 of the instant complaint.

108.  CARNIVAL'S breach was the cause in-fact of GELL'S great bodily harm in that, but for CARNIVAL'S breach her injuries would not have occurred.

109.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

110.  This negligence proximately caused GELL great bodily harm in that, but for this negligence, GELL'S injuries would not have occurred.

111.  As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

112.  The losses are permanent and/or continuing in nature.

113.  GELL has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VII**
**VICARIOUS LIABILITY AGAINST CARNIVAL FOR THE NEGLIGENCE OF THE**
**SHIP'S MEDICAL STAFF**

114.   GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

115.   CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

116.   Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

117.   At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of CARNIVAL, subject to its direction and control, who were engaged in the activity of discharging CARNIVAL'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

118.   CARNIVAL is estopped to deny that the ship's medical staff (including its physicians

and nurses), and the ship's crew, were its agents and/or employees and/or servants.

119. CARNIVAL directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

120. CARNIVAL created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

121. CARNIVAL pays to stock the medical center with all supplies, medical machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

122. CARNIVAL collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

123. CARNIVAL'S marketing materials described the infirmary in proprietary language.

124. The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times they were subject to termination, or other discipline, by CARNIVAL.

125. CARNIVAL provided the ship's medical personnel and regular crew certain forms of liability insurance and/or indemnification rights.

126. At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

    a. The ship's doctor misdiagnosed the strength of the pulse in GELL's right ankle and misdiagnosed him with a serious vascular injury.

    b. The ship's doctor rushed GELL to get him off the ship and arranged to have

him airlifted to a hospital in Juneau, Alaska. However, when GELL arrived at this hospital, he was informed that he did not have a vascular injury, such that GELL did not need to be transported to this hospital in Juneau, Alaska, thereby incurring additional pain, suffering, expenses, and/or other damages.

c.  GELL was prescribed an insufficient amount of pain medicine for his trip to the hospital in Juneau, Alaska, such that he was in great pain for a longer amount of time.

d.  When the ship's medical staff took GELL back to his cabin, they did not switch him to a handicap room

e.  When the ship's medical staff took GELL back to his cabin, they could not fit his stretcher through the door, such that GELL had to drag himself from the hallway to his bed.

f.  CARNIVAL failed to promptly provide GELL with proper medical and/or first aid care and attention.

g.  CARNIVAL failed to timely and properly attend to GELL, to his injuries, and to his pain.

h.  CARNIVAL failed to provide reasonable medical and/or first aid care.

i.  CARNIVAL failed to timely and properly treat and care for GELL.

j.  CARNIVAL failed to timely and properly examine GELL'S injuries.

k.  CARNIVAL failed to take proper measures to secure proper treatment for GELL, including unreasonably delaying taking measures to secure such proper treatment.

l.  CARNIVAL failed to properly bring and/or arrange for GELL to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.  CARNIVAL failed to give GELL proper discharge instructions.

n.  CARNIVAL failed to give GELL adequate pain medicine.

127.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

128.  Under the doctrine of *Respondeat Superior*, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

129.  CARNIVAL is therefore vicariously liable for all injuries and damages sustained by GELL as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

130.  At all times material hereto, the aforementioned acts and/or omissions on the part of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

131.  The negligence of CARNIVAL'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused GELL great bodily harm in that, but for CARNIVAL negligence, GELL'S injuries would not have occurred and/or said injuries would have been substantially lessened.

132.  CARNIVAL, through its employees and agents, including the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not

meet reasonable standards of medical care.

133.  As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

134.  The losses are permanent and/or continuing in nature.

135.  GELL has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VIII**
**APPARENT AGENCY**
**FOR THE ACTS OF THE SHIP'S MEDICAL STAFF**

136.  GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

137.  At all times material hereto, the ship's medical staff and regular crew represented to GELL and to the ship's passengers as employees and/or agents and/or servants of CARNIVAL, in

that:

    a.  The medical staff wore a ship's uniform;

    b.  The medical staff ate with the ship's crew;

    c.  The medical staff was under the commands of the ship's officers;

    d.  The medical staff worked in the ship's medical department;

    e.  The medical staff was paid a salary by CARNIVAL;

    f.  The medical staff worked aboard the vessel;

    g.  The medical staff spoke to GELL as though they had authority to do so by CARNIVAL.

138.  In addition, CARNIVAL further represented to GELL that the vessel's medical staff and regular crew were agents and/or employees of CARNIVAL through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as the "Carnival *Spirit*'s Medical Center/our infirmary/our medical center," and through encouraging GELL to make use of "its" infirmary/medical center if GELL was in need of medical attention.

139. Furthermore, at no time did CARNIVAL represent to GELL in particular, or the ship's passengers in general, in a meaningful way that the vessel's medical staff and regular crew were not agents or employees of CARNIVAL.

140. At all material times, GELL reasonably relied on the representations to GELL'S detriment that the medical staff and regular crew were employees, and/or agents, and/or servants of CARNIVAL.

141. It was reasonable to believe that the medical staff and regular crew were CARNIVAL'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by CARNIVAL.

142. This reasonable reliance was detrimental because it delayed GELL from receiving proper medical treatment and/or GELL would not have gone on the subject cruise with CARNIVAL had GELL known that the medical staff and regular crew on the ship were not CARNIVAL'S agents.

143. CARNIVAL is estopped to deny that the medical staff and regular crew were its apparent agents, and/or apparent employees, and/or apparent servants.

144. CARNIVAL had a duty to provide GELL with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide GELL with reasonable care under the circumstances.

145. GELL'S injuries were aggravated due to the fault and/or negligence of CARNIVAL through the acts of its apparent agents as follows:

   a. The ship's doctor misdiagnosed the strength of the pulse in GELL's right ankle and misdiagnosed him with a serious vascular injury.

   b. The ship's doctor rushed GELL to get him off the ship and arranged to have him airlifted to a hospital in Juneau, Alaska. However, when GELL arrived at this hospital, he was informed that he did not have a vascular injury, such that GELL did not need to be transported to this hospital in Juneau, Alaska, thereby incurring additional pain, suffering, expenses, and/or other damages.

   c. GELL was prescribed an insufficient amount of pain medicine for his trip to the hospital in Juneau, Alaska, such that he was in great pain for a longer amount of time.

   d. When the ship's medical staff took GELL back to his cabin, they did not

switch him to a handicap room

e.  When the ship's medical staff took GELL back to his cabin, they could not fit his stretcher through the door, such that GELL had to drag himself from the hallway to his bed.

f.  CARNIVAL failed to promptly provide GELL with proper medical and/or first aid care and attention.

g.  CARNIVAL failed to timely and properly attend to GELL, to his injuries, and to his pain.

h.  CARNIVAL failed to provide reasonable medical and/or first aid care.

i.  CARNIVAL failed to timely and properly treat and care for GELL.

j.  CARNIVAL failed to timely and properly examine GELL'S injuries.

k.  CARNIVAL failed to take proper measures to secure proper treatment for GELL, including unreasonably delaying taking measures to secure such proper treatment.

l.  CARNIVAL failed to properly bring and/or arrange for GELL to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.  CARNIVAL failed to give GELL proper discharge instructions.

n.  CARNIVAL failed to give GELL adequate pain medicine.

146.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

147.  As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries

resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

148.  The losses are either permanent or continuing in nature.

149.  GELL has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT IX
### ASSUMPTION OF DUTY FOR THE
### NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

150.  GELL hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35 as if set forth herein.

151.  CARNIVAL owed GELL the duty to exercise reasonable care under the circumstances for the safety of its passengers.

152.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

153. CARNIVAL elected to discharge this duty by having GELL seen by its own ship's physicians and/or other crew members.

154. As such, CARNIVAL voluntarily assumed a duty for the benefit of GELL to use reasonable care in the provision of medical services to GELL.

155. At all times material hereto, CARNIVAL, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

    a. The ship's doctor misdiagnosed the strength of the pulse in GELL's right ankle and misdiagnosed him with a serious vascular injury.

    b. The ship's doctor rushed GELL to get him off the ship and arranged to have him airlifted to a hospital in Juneau, Alaska. However, when GELL arrived at this hospital, he was informed that he did not have a vascular injury, such that GELL did not need to be transported to this hospital in Juneau, Alaska, thereby incurring additional pain, suffering, expenses, and/or other damages.

    c. GELL was prescribed an insufficient amount of pain medicine for his trip to the hospital in Juneau, Alaska, such that he was in great pain for a longer amount of time.

    d. When the ship's medical staff took GELL back to his cabin, they did not switch him to a handicap room

    e. When the ship's medical staff took GELL back to his cabin, they could not fit his stretcher through the door, such that GELL had to drag himself from the hallway to his bed.

f.  CARNIVAL failed to promptly provide GELL with proper medical and/or first aid care and attention.

g.  CARNIVAL failed to timely and properly attend to GELL, to his injuries, and to his pain.

h.  CARNIVAL failed to provide reasonable medical and/or first aid care.

i.  CARNIVAL failed to timely and properly treat and care for GELL.

j.  CARNIVAL failed to timely and properly examine GELL'S injuries.

k.  CARNIVAL failed to take proper measures to secure proper treatment for GELL, including unreasonably delaying taking measures to secure such proper treatment.

l.  CARNIVAL failed to properly bring and/or arrange for GELL to be brought to a reasonable hospital/emergency room within a reasonable amount of time.

m.  CARNIVAL failed to give GELL proper discharge instructions.

n.  CARNIVAL failed to give GELL adequate pain medicine.

156.  At all times material hereto, the aforementioned acts or omissions on the part of CARNIVAL fell below the standard of care.

157.  CARNIVAL'S negligence proximately caused GELL great bodily harm in that, but for CARNIVAL'S negligence, GELL'S injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

158.  CARNIVAL, through its employees and agents, to wit, the ship's medical staff and regular crew, knew, or should have known, that the medical and first aid procedures they employed violated reasonable standards of medical care.

159.  As a result of CARNIVAL'S negligence, GELL has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of GELL'S vacation, cruise, and transportation costs.

160.  The losses are permanent and/or continuing in nature.

161.  GELL has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, FRANKLIN GELL, demands judgment against Defendant, CARNIVAL CORPORATION & PLC, for damages suffered and costs incurred, as well as for damages and costs that GELL will suffer and incur in the future, as a result of her bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of GELL'S vacation, cruise, transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, FRANKLIN GELL, demands trial by jury on all issues so triable.

**Dated:** September 1, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973

**ARONFELD TRIAL LAWYERS**
**Aronfeld.com**

mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:       (305) 441.0440
F:       (305) 441.0198
***Attorneys for Plaintiff***